**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| OMAR GRAYSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:15-cv-00981-SMY |
| | ) | |
| JODY GOETTING, and | ) | |
| SALVADOR GODINEZ, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

**YANDLE, District Judge:**

Omar Grayson is currently incarcerated at the Pontiac Correctional Center in Pontiac, Illinois, but was previously incarcerated at the Pinckneyville Correctional Center in Pinckneyville, Illinois. (Doc. 1 at 1 & 8.) Proceeding *pro se*, Grayson has filed a civil rights action against Jody Goetting, an Assistant Warden at Pinckneyville, and Salvador Godinez, the former Director of the Illinois Department of Corrections. (*Id.*) Grayson alleges that Goetting forced him to tear out his dreadlocks while he was incarcerated at Pinckneyville and that the Illinois Department of Corrections has a policy permitting the removal of dreadlocks without employing searches of dreadlocks instead, all in violation of Grayson's constitutional rights and his rights under the Religious Land Use and Institutionalized Persons Act. (*See id.* at 8-11.) Grayson seeks money damages and permanent injunctive relief. (*Id.* at 12.)

This matter is now before the Court for a preliminary review of Grayson's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court

"shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

While Grayson's complaint is difficult to read, as best the Court can tell, Grayson is a member of the African Hebrew Israelites of Jerusalem. (Doc. 1 at 8.) He has taken the Nazirite vow—a vow that compels him not to cut his hair and to wear his hair in dreadlocks. (*Id.*) Grayson was transferred to Pinckneyville on September 6, 2013, and was told that he had to remove his dreadlocks so that an identification photo could be taken. (*Id.*) Grayson filed an emergency grievance to prevent the removal of his dreadlocks, but he did not receive a written response to that grievance. (*Id.*) On September 18, 2013, Goetting visited Grayson's cell and told him that he had to remove his dreadlocks; if he did not, they would be forcibly removed. (*Id.*) Grayson ultimately complied and his identification photo was taken. (*Id.*) He later filed a non-emergency grievance concerning the removal of his dreadlocks, which was denied on the grounds that the Department of Corrections had a policy permitting the removal. (*Id.* at 7.)

Grayson filed his initial complaint concerning the removal of his dreadlocks at Pinckneyville in December 2013, but voluntarily dismissed that case in early 2015. (*Id.* at 4.) On September 3, 2015, Grayson filed a renewed complaint in this Court. (*Id.* at 1.)

## Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to organize the claims in Grayson's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise

directed by the Court.  The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** Goetting's removal of Grayson's dreadlocks at Pinckneyville violated Grayson's Free Exercise Clause rights under the First Amendment.

**COUNT 2:** Goetting allowed other prisoners to maintain their dreadlocks but required Grayson to remove his, in violation of Grayson's Establishment Clause rights and his Equal Protection Clause rights.

**COUNT 3:** Goetting employed cruel and unusual punishment when he forced Grayson to remove his dreadlocks, in violation of the Eighth Amendment.

**COUNT 4:** Grayson's dreadlocks were removed pursuant to an ongoing prison policy allowing for the removal of a prisoner's dreadlocks without consideration of searches instead of removal, in violation of Grayson's rights under the Religious Land Use and Institutionalized Persons Act.

Grayson's complaint focuses on the free exercise of his religion under the First Amendment, so the Court will start there (**Count 1**).  "[A] prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison."  *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir 1990).  To state a claim under the Free Exercise Clause of the First Amendment, a plaintiff must allege facts to suggest that his "right to practice [his chosen religion] was burdened in a significant way."  *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005).  Here, Grayson states Goetting forced him to remove his dreadlocks in violation of his religious tenets, and that is sufficient to state an arguable claim at the screening stage. Accordingly, **Count 1** may proceed as to Goetting.  That said, **Count 1** must be dismissed as to Godinez, as Grayson does not mention him once in the narrative section of his complaint. Instead, he only references Godinez by lumping him into the category of "Defendants" and by making conclusory allegations against him at the end of the complaint.  *See, e.g., Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (lumping of defendants without "any

details about who did what" is "inadequate"); *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009)

("formulaic recitations" that all parties are liable "does not put the defendants on notice" of what

they did.)

Grayson next alleges that Goetting discriminated against his faith or targeted him

personally when he forced Grayson to remove his dreadlocks, as other prisoners and members of

other faiths were permitted to maintain their dreadlocks (**Count 2**).  The "religious dimension"

of this alleged discrimination "is governed by the religion clauses of the First Amendment,

leaving for the equal protection clause only a claim of arbitrariness unrelated to the character of

the activity allegedly discriminated against."  *See Reed v. Faulkner*, 842 F.2d 960, 962, 964 (7th

Cir. 1988) (separate equal protection violation could exist if officials treat one religion

"differently from" another deliberately and "for no reason at all").  The religion clause of the

First Amendment implicated here is the Establishment Clause, which "prohibits the government

from favoring one religion or another"—the state cannot "make it easier for adherents of one

faith to practice their religion than for adherents of another faith to practice *their* religion, unless

there is a secular justification for the difference in treatment."  *Kaufman*, 419 F.3d at 683-84.

Construing his complaint liberally, Goetting has alleged enough to make out arguable Equal

Protection and Establishment Clause claims against Goetting, so **Count 2** may proceed as to him.

However, **Count 2** must be dismissed as to Godinez, as he is not referenced in Grayson's

narrative and the only allegations against him are lumped ones against all parties.

Grayson goes on to allege that Goetting's decision to force the removal of his dreadlocks

constituted cruel and unusual punishment in violation of the Eighth Amendment (**Count 3**).  This

claim must be dismissed as duplicative, as it concerns the same facts as Goetting's other

constitutional claims.  *See*, *e.g*., *Wiliams v. Snyder*, 150 F. App'x 549, 552 (7th Cir. 2005) ("cruel

and unusual punishment" claim properly dismissed as it "implicated" the "same set of facts" as the "free exercise" claim); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (affirming dismissal of Eighth Amendment claim because it was based on the same set of facts as the other claims, and those other claims gained "nothing by attracting additional constitutional labels").

Grayson's final claims concern the Religious Land Use and Institutionalized Persons Act (**Count 4**).  To state a claim under the Act, a prisoner must allege facts tending to show "that he seeks to engage in an exercise of religion" and that "the challenged practice substantially burdens that exercise of religion."  *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008).  Grayson makes a number of allegations linked to the Act.  However, most of them ask for money damages related to the events of 2013, and to that extent the claims must be dismissed—the "remedy available" to Grayson under the Act is "limited to declaratory or injunctive relief."  *West v. Grams*, 607 F. App'x 561, 566 (7th Cir. 2015).  That said, construing Grayson's complaint liberally, Grayson asks for a change in Illinois Department of Corrections policy so that dreadlocks can be searched rather than sheared, as well as permanent injunctive relief related to that policy.  That is sufficient to state an arguable claim under the Act, at least at screening review.  Once more, while Grayson's injunctive requests are tenuous given that he makes no recent allegations concerning his dreadlocks and he has been transferred out of Pinckneyville, the Court cannot say at this very early stage that his injunctive requests should be dismissed at screening.  Accordingly, **Count 4** may proceed to the extent it seeks ongoing injunctive relief.

There is one remaining question concerning Grayson's claims under the Religious Land Use and Institutionalized Persons Act, namely who is the proper defendant.  Grayson has sued Goetting and Godinez in this case, but Goetting does not work at Grayson's current prison and Godinez is no longer the Director of the Illinois Department of Corrections.  Grayson's claim

under the Act is an official capacity one against the State concerning an Illinois Department of Corrections policy, so the proper defendant appears to be the current Director of the Illinois Department of Corrections, namely Acting Director John Baldwin.  Accordingly, Baldwin will be added to this case in his official capacity only for Grayson's claim under the Act.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **GOETTING**.  **COUNT 1** is **DISMISSED without prejudice** as to **GODINEZ**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **GOETTING**. **COUNT 2** is **DISMISSED without prejudice** as to **GODINEZ**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED without prejudice**. Because there are no further claims against him, **GODINEZ** is **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that **COUNT 4** shall **PROCEED** against **BALDWIN** in his official capacity only.  The **CLERK** is **DIRECTED** to add John Baldwin to the caption.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **GOETTING** and **BALDWIN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at his work address, the employer shall furnish the Clerk with the Defendant's current

work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Philip M. Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or

her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 25, 2015**

s/ STACI M. YANDLE
**United States District Judge**